```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

WILLIE J. MURPHY, SR.,       }
                             }
     Plaintiff,              }
                             }        CIVIL ACTION NO.
v.                           }        08-AR-0038-S
                             }
CITY OF BIRMINGHAM, et al.,  }
                             }
     Defendants.             }
```

### MEMORANDUM OPINION

The court has before it a motion for summary judgment filed on September 24, 2008, by defendants City of Birmingham ("City") and Officer Matthew Hutchins ("Hutchins") (collectively "defendants"). Plaintiff Willie James Murphy ("Murphy") has filed no response. For the reasons that follow, defendants' motion as to Murphy's federal claims will be granted, whereas his state claims will be remanded to the Circuit Court of Jefferson County.

### FACTS[1]

---

[1] In accordance with Fed. R. Civ. P. 56(c), the narrative statement of facts includes facts that are undisputed by the parties, and where there is a dispute, the facts are presented in the light most favorable to the non-moving party. The application of this rule is complicated when the non-moving party files no response to movant's rendition of the material undisputed facts. How much responsibility does the court have, without any help from the non-movant, to discover disputes of material fact? "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to produce evidence to rebut this showing. *See Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553.

On December 17, 2005, Hutchins and Officer Morton ("Morton")[2] (collectively "the officers") pulled their patrol car in front of Murphy's white Cadillac Escalade. Murphy is black. Both officers are white. Passengers in the Escalade included Murphy's wife, two of his sons, and one of his grandchildren. Whether the emergency lights on the patrol car were activated before the officers pulled in front of Murphy's Escalade is disputed. The reason given for pulling over Murphy was that Hutchins, while on patrol the previous day, "ran the tag" on the same Escalade due to the high incidence of Escalade thefts. Hutchins's Aff. p. 3. He discovered the vehicle belonged to a Willie James Murphy at 661 Candle Lane. Although the vehicle had not been reported stolen, it was revealed during the inquiry that a felony robbery warrant existed for Willie James Murphy out of Montgomery County, Alabama. The physical descriptions and dates of birth were very similar. By the time this information came back, Hutchins had lost Murphy's Escalade.[3] When Hutchins and Morton observed the Escalade the next evening, they promptly stopped it.

Morton walked to the driver's side of the Escalade and requested Murphy's driver's license. Murphy handed it to him. Morton then told Murphy to step out of the vehicle and place his

---

[2] Officer Morton is not a named defendant.

[3] The veracity of Hutchins's explanation as to why he pulled over Murphy has not been questioned. What is questioned by Murphy is the reasonableness of Hutchins's reliance on the information upon which he based the stop.

hands on the vehicle. Murphy complied. Morton grabbed Murphy from behind his belt and trousers in the center of his lower back.[4] Murphy asked Morton many times during this incident why he was being detained and received no response. Murphy also complained to Morton that the way Morton was holding him was aggravating his lower back, with which he had problems. Morton did nothing. Morton held Murphy at the side of the vehicle for an indeterminate amount of time before moving him to the back of the vehicle, where the two encountered Hutchins. Morton gave Murphy's driver's license to Hutchins. Murphy asked Hutchins why he was being held, and Hutchins answered him, telling him that someone driving Murphy's vehicle with the same name as Murphy robbed a business.

The officers then walked Murphy around to the front of the vehicle where the patrol car was located. Murphy's family was very upset. One of his sons exited the vehicle and asked the officers

---

[4] There is a dispute as to whether Morton told Murphy at this time that he was under arrest. Murphy alleges in his complaint that he did, and claims false arrest. However, defendants maintain that Murphy was never officially arrested and offer evidence in support. Hutchins's Aff. at 4. Further, case law supports a finding that the officers were making an investigatory stop rather than an arrest. *See Courson v. McMillian*, 939 F.2d 1479, 1492 (11th Cir. 1991)("[T]his circuit has recognized that an officer's not taking the detained individual to a station or office, not conducting a full search of the person, or not touching the individual indicated an investigatory stop rather than an arrest."). Because Murphy failed to respond to defendants' motion, the court is left with a vague allegation that an arrest was made because Morton, who is not a defendant, allegedly told Murphy that he was under arrest. This is not enough to establish that fact; the court will move forward as if an investigatory stop occurred, rather than an arrest, although the result would be the same if the "stop" morphed into an "arrest." *See* Fed. R. Civ. P. 56(e)(2)("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial.").

why they were doing this to his father and told them to watch out for his back. Murphy and the officers ordered him to return to the vehicle. He complied. According to Murphy, Hutchins was giving all of the orders while Morton was the one in physical contact with Murphy. Hutchins and Murphy did have a verbal exchange during which Murphy told the officers he and his family were "legitimate people." Hutchins replied by saying that Richard Scrushy was a criminal. Murphy retorted that he did not understand what Scrushy had to do with anything. Murphy was then seated in the back of the patrol car. Around this time, another police officer, a black male, arrived and went to speak with Murphy's family.[5] After the officers finished running Murphy's license through the system, they discovered that the social security numbers differed between the Willie James Murphy wanted for robbery and plaintiff Murphy. Hutchins let Murphy out of the patrol car and told him that they had the wrong person. Murphy complained to the officers about the situation and insisted he would file a complaint with the Police Chief. He then got in his vehicle and left.

During this incident, Murphy was never handcuffed, searched,

---

[5] The point at which this officer arrived is disputed. Murphy claims the officer arrived before he was placed in the back of the patrol car. He said the way he was handled by the officers changed upon arrival of this new officer. Hutchins, by affidavit, claims that the new officer arrived after Murphy was let out of the patrol car. There is also some dispute over when the conversation about Scrushy occurred. The court, however, finds the timing of these matters to be inconsequential. As for Murphy's allegation that the behavior of the officers changed upon arrival of the new officer, the court cannot accept this as fact. It is not alleged in his complaint. Rather, it is alleged in the Report of Complaint Murphy filed with the Birmingham Police Department. It is a conclusory allegation supported by no facts.

patted down, read his Miranda rights, booked, transported to a jail facility or charged with a crime. According to Murphy, the entire incident, from when he was stopped until when he drove off, lasted approximately twenty to twenty-five minutes.[6] After the incident, Murphy called and spoke with Sergeant Majors at the West Precinct of the Birmingham Police Department. He told him what happened. Sergeant Majors responded by repeating the reasons given by Hutchins for stopping Murphy. The same day of the incident, Murphy filed a statement at the West Precinct. This complaint generally memorializes the facts set forth above, with one exception in that it says both officers apologized to Murphy at the scene for the inconvenience. On December 18, 2005, Murphy sent a detailed Report of Complaint to the Police Chief and someone in Internal Affairs. Internal Affairs sustained in part Murphy's complaint, stating that Hutchins engaged in unnecessary conversation with Murphy, namely, the comment about Scrushy. For this, Hutchins was given a letter of counseling. Internal Affairs did not sustain any further part of Murphy's Report of Complaint. Murphy never went to a hospital or sought any medical assistance.

    Murphy filed his complaint in the Circuit Court of Jefferson County, Birmingham Division, on January 7, 2008, against the City,

---

[6] Hutchins, by affidavit, avers that the entire matter lasted about ten minutes. Murphy filed no response disputing this. Again the court questions how far it should go in trying to view the facts in favor of a plaintiff who fails to respond to a fact stated by a defendant that is not in accord with the complaint.

Hutchins, in his individual and official capacities, and fictitious defendants. The case was removed to this court on the same day. The claims contained in the complaint are as follows: false arrest and imprisonment (Count One); malicious prosecution (Count Two); assault and battery (Count Three); invasion of privacy (Count Four); tort of outrage (Count Five); defamation (Count Six); civil conspiracy (Count Seven); deprivation of civil rights under color of law (Count Eight); negligence and wantonness (Count Nine); and negligent supervision and training (Count Ten). Those counts that state federal causes of action are Count Eight and Count Nine; they are brought pursuant to 42 U.S.C. §§ 1983 and 1985.[7]

## ANALYSIS

### *The Federal Causes of Action*

Only if defendants' motion is granted as to the federal claims will the court have to confront the question of whether to exercise supplemental jurisdiction over the state claims. First, the court will evaluate the claims brought pursuant to § 1983. Second, it will evaluate the claim brought pursuant to § 1985.[8]

---

[7] The complaint states, "Certain counts in this action arise under 42 U.S.C. §§ 1983 and 1985." Compl. ¶ 6. The court finds that this references Counts Eight and Nine, as they are the only counts that explicitly refer to these federal statutes. Although Murphy may have intended to invoke federal law in other counts, that is not clear from the face of the complaint. Further, it is not clear from the face of the complaint which section of 1985 Murphy invokes. The court assumes an invocation of § 1985(3).

[8] The complaint invokes both § 1983 and § 1985 in two counts. However, the § 1985 claim is singular in nature, a claim of conspiracy to interfere with civil rights.

*Murphy's § 1983 claims against the City*

Murphy sues the City and Hutchins, in his official and individual capacity, pursuant to § 1983. Because suits against city officials in their official capacity are treated as suits against the city, see *Smith v. Allen,* 502 F.3d 1255, 1263 (11th Cir. 2007), the court properly focuses its analysis on the City's liability.

An analysis of Murphy's § 1983 claims against the City must begin with the proposition that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Thus, in order to survive summary judgment, Murphy's complaint must, at the very least, "identify a municipal policy or custom that caused his injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he . . . could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is a settled, permanent practice that takes on the force of law. *See Monell*, 436 U.S. at 691.

Negligent supervision and training can support municipal liability only "where a municipality's failure to train its

7

employees in a relevant respect evidences a **deliberate indifference** to the rights of its inhabitants," such that it amounts to a policy or custom. *Sewell*, 117 F.3d at 489-90 (emphasis added). "Deliberate indifference" exists where "a municipality **knew** of a need to train and/or supervise in a particular area and the municipality made a **deliberate choice** not to take any action." *Gold*, 151 F.3d at 1350 (emphasis added). In order to have properly alleged deliberate indifference by the City, Murphy's complaint must contain, at the least, allegations that the City had notice of the need to supervise or train differently. *Id.* at 1351.

Murphy has failed to create a genuine issue of material fact to demonstrate that the City had an official policy that caused the alleged constitutional violations. Nowhere in the complaint does Murphy adequately allege that such a policy existed. While Murphy's complaint does contain allegations of negligent supervision and training, these allegations are far too vague and conclusory, especially in light of evidence that the City has an official policy in place providing for the thorough training of police officers. Despite ample opportunity to do so, Murphy offers no response to this evidence. Further, the complaint itself explicitly alleges **negligence** on the part of the City. Negligence is not deliberate indifference. Negligence is not a constitutional violation. Thus, the complaint's allegations of negligent training and supervision, even when read in the light most favorable to

Murphy, do not create a genuine issue as to whether an official policy existed that caused the harm complained of.

Moreover, the complaint alleges no facts in support of an argument that Hutchins did, or even could, make a policy decision on behalf of the City. In fact, case law marshals against such an assertion, even if one had been made. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 486 (1986)("A sheriff, for example, is not the final policymaker with respect to the probable-cause requirement for a valid arrest. He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from controlling law of arrest would not represent municipal policy."). What's more, Murphy fails to point to a settled practice that could be deemed custom.[9] Instead, the complaint contains the following token *respondeat superior* language: "Individual Defendants were acting within the scope of their employment and their acts were done in furtherance of the municipal Defendant's interests." Compl. ¶¶ 18, 25, 31, 35, 39, 42, 46, 52 & 56. As previously noted, the City cannot be held liable for Hutchins's actions based on a *respondeat superior* theory. Because neither the complaint nor any evidence creates a genuine issue as to the existence of an official policy or custom, which would include a policy decision made by Hutchins as a person with

---

[9] Murphy's claim of negligent supervision and/or training fails to create a genuine issue as to the existence of City custom for the reasons previously discussed.

9

the capacity to make such a decision, the defendants' motion will be granted on the § 1983 claims against the City.

*Murphy's § 1983 claims against Hutchins*

In addition to his reliance upon the absence of proof of any unconstitutional conduct, Hutchins invokes qualified immunity as a defense to Murphy's § 1983 claim against him in his individual capacity and seeks summary judgment on this basis. Murphy is conspicuously silent on this dispositive subject.

A public official is entitled to qualified immunity for actions taken pursuant to his discretionary authority "insofar as [his] conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). First, the court is, as it must be, convinced that Hutchins acted within the scope of his discretionary authority in stopping Murphy and engaging in the conduct about which Murphy complains. "A government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)(quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981). Second, the court, taking the evidence in the light most favorable to Murphy, must decide whether Murphy has adequately alleged and provided evidence

of the violation of a constitutional right. *See Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007). Finally, if and only if, the court finds a violation of a constitutional right, it can then determine whether a reasonable officer in Hutchins's position would have believed his actions were lawful "in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Cannon v. Macon County*, 1 F.3d 1558, 1564 (11th Cir. 1993)(quoting *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992)); *see also Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)(quoting *Andreu v. Sapp*, 919 F.2d 637, 641 (11th Cir. 1990))("Whether a claimed right 'is clearly established is a question of law for the court to decide.'"). To avoid summary judgment, Murphy "must show that [Hutchins] is not entitled to qualified immunity legally or that there is a genuine issue of material fact regarding [Hutchins]'s conduct as being violative of the clearly established law governing the case." *Id.*

It is undisputed that Hutchins was on duty as a City police officer when he stopped Murphy's vehicle. It is undisputed that the stop and subsequent detainment of Murphy by Hutchins and his fellow officer "were carried out in the performance of his normal job duties and were within the authority delegated to him by his employer." *Rich*, 841 F.2d at 1564. Further, there is nothing in the record to indicate that Murphy disagrees with this conclusion. Thus, based on the facts as alleged in the complaint and the

affidavits submitted by defendants, the court finds that Hutchins has adequately demonstrated that he acted within the scope of his discretionary authority.

The court cannot find within the complaint an adequate allegation of a constitutional violation. The complaint itself is woefully deficient. For example, Count Eight, titled "Deprivation of Civil Rights Under Color of Law," states, in large part, the following:

> [T]he Defendants deprived Plaintiff . . . , of particularly: his right to free speech guaranteed under the First Amendment to the Constitution, his rights to security of person and freedom from arrest, except on probable cause, supported by oath or affirmation, guaranteed by the Fourth Amendment to the Constitution; his right to be informed of the true nature and caused of the accusation against him, guaranteed by the Sixth Amendment to the Constitution; his right not to be deprived of liberty without due process of law, guaranteed by the Fifth and Fourteenth Amendments to the Constitution; his rights reserved or retained under the Ninth and Tenth Amendments to the Constitution; his right to the equal protection of the laws guaranteed under the Fourteenth Amendment to the Constitution[.]

Compl. ¶ 49. This laundry list of allegations cannot support a finding that Murphy had a constitutional right that was violated. The count contains mere conclusions, no facts. Murphy merely incorporates by reference to all of his preceding facts without identifying which facts are relevant to, and form the basis of, his § 1983 claim. *See* Compl. ¶ 48. Further, the five short paragraphs labeled "Background Facts" lack material facts to support Murphy's allegations. Compl. ¶¶ 9-13. Instead, Murphy relies on vague

pleadings and general accusations. Without a response from Murphy to the express facts set forth by defendants, the court would be hard-pressed to conclude that Murphy has carried his burden of showing that a violation of his constitutional rights occurred.[10]

The closest Murphy comes to alleging a violation of his constitutional rights is his insistence that the stop and detainment violated his Fourth Amendment rights. As discussed previously, the court concludes, consistent with established procedure, that what occurred on December 17, 2005, was either an investigatory stop and detention rather than an arrest or, in any event, a reasonable law enforcement reaction to information that proved erroneous. To justify an investigatory detention, a police officer must have a "reasonable and articulable suspicion that the individual committed or is about to commit a crime." *U.S. v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1998); *see Terry v. Ohio*, 392 U.S. 1, 21 (1968). Failing to have such a suspicion constitutes a violation of the Fourth Amendment. There was ample basis for suspicion under these circumstances.

---

[10] It is unclear from the face of the complaint what actions taken by Hutchins Murphy believes to be a violation of his First Amendment right to free speech and his rights reserved or retained under the Ninth and Tenth Amendments. Murphy's "kitchen sink" approach to his allegations of constitutional violations is unsupported by the facts. Indeed, his allegation that he was denied his right to be informed of the true nature and cause of the accusation against him is devoid of factual support; although, at least with this claim, the court can discern the basis of his argument. Murphy alleges that he asked Morton repeatedly why he was being detained and was ignored. But, by Murphy's own admission, Hutchins answered Murphy promptly when asked the same question. *See* Murphy's Depo. pp. 47-55. Thus, the facts do not amount to a colorable claim against Hutchins. The court abstains from addressing the issue as to Morton, who is not a named defendant.

It is an undisputed fact that Hutchins, while on patrol the day prior to the encounter with Murphy, ran the tag on Murphy's Escalade due to the high incidence of Escalade thefts. The results showed that a felony robbery warrant existed for a person with exactly the same name as Murphy and very similar data. The next day, Hutchins, while on patrol in the same area, saw Murphy's Escalade and stopped it. He was under the belief that Murphy may have been the same person wanted for felony robbery. These facts reflect a reasonable and articulable suspicion on Hutchins behalf that Murphy had committed a felony offense. In *Courson*, the Eleventh Circuit stated:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or criminal to escape. . . . . A brief stop of a suspicious individual [or vehicle in this case], in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

939 F.2d at 1490. Hutchins's brief stop of Murphy's vehicle, in light of the facts provided to the court, is a reasonable reaction to what Hutchins's knew at the time. Absent an indication that unreasonable force was used by Hutchins or that any other actions constituting a possible violation occurred, Murphy has failed to meet his summary judgment burden of showing a violation of his constitutional rights.

Even if the court found that a violation of a constitutional

right was demonstrated by evidence, the court would find that a reasonable officer in Hutchins's position would have believed his actions were lawful "in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Cannon*, 1 F.3d at 1564. Thus, summary judgment for defendants would still be granted on the federal claims.

*Murphy's § 1985 claim*

To state a successful § 1985(3)[11] conspiracy claim, a plaintiff must allege the following:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Denny v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)(quoting *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627 (11th Cir. 1992)). Murphy's complaint contains only conclusory allegations of a conspiracy. It claims only that "[d]efendants were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive Plaintiff of rights guaranteed to him under the constitution and laws of the United States, as hereinabove enumerated." Compl. ¶ 50. It alleges no facts to suggest Hutchins and another individual reached an

---

[11] Although the complaint fails to explicitly indicate which subsection of § 1985 Murphy claims was violated, the court concludes § 1985(3) is the subdivision seemingly at issue.

understanding to violate Murphy's rights. In fact, because the only named defendant is Hutchins, the court concludes that Murphy is claiming Hutchins conspired with the City, the only other named defendant. However, a municipality, "which is limited by law to the purposes and objects of its creation, namely, the maintaining and exercising of the powers of local government, cannot in its sovereign or municipal capacity be a party to a conspiracy." *Charlton v. City of Hialeah*, 188 F.2d 421, 422 (5th Cir. 1951). Even if the City could be a party to a conspiracy, there are no facts supporting the conspiracy allegation.

Because the complaint contains only conclusory allegations of a conspiracy, even reading it liberally, as the court must, and no evidence has been provided to support those allegations or rebut affidavits submitted in support of defendants' motion, the court concludes that there is no triable issue of material fact on the § 1985(3) claim. As such, summary judgment on this claim will be granted.

### *The State Causes of Action*

"When all federal claims in an action are dismissed with prejudice, 28 U.S.C. § 1367(c)(3) permits a federal court to decline to exercise supplemental jurisdiction over any remaining state-law claims." *Gooden v. City of Talladega*, 966 So. 2d 232, 235 n.1 (Ala. 2007). Where a case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441, a

...

federal court declining to exercise supplemental jurisdiction should remand to state court. *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1123 (11th Cir. 2005). Summary judgment being entered on Murphy's § 1985(3) conspiracy claim and his claims brought pursuant to § 1983, the only claims left are state law claims. This court declines to exercise jurisdiction over these claims, which involve questions of municipal liability and discretionary function immunity governed by the law of Alabama. This is in keeping with the direction of the Eleventh Circuit which has encouraged district courts to decline to exercise supplemental jurisdiction over "any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004)(citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). The state law claims will be remanded to the court from which the case was removed.

## CONCLUSION

For the foregoing reasons and by separate order, defendants' motion for summary judgment will be granted in part and the balance of the case remanded.

DONE this 31st day of December, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

17